# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Maximus K., | Case No. 23-CV-1403 (ECT/DLM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Martin J. O'Malley, Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Maximus K. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for childhood disability benefits ("CDB") and for supplemental security income ("SSI"). *See* 42 U.S.C. § 405(g). This matter is before the Court on the parties' cross-briefs seeking judgment on the administrative record. (Docs. 16 (Plaintiff's brief), 18 (Commissioner's brief).) The case has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. As a result of that review, the Court recommends that the Commissioner's denial of benefits be affirmed.

## BACKGROUND

On March 11, 2021, Plaintiff filed applications for CDB and SSI, with a disability onset date of March 31, 2020. (Tr.[1] at 289-97.) The Social Security Administration denied his claims initially (Tr. at 130-34 (CDB), 135-39 (SSI)), and upon reconsideration (Tr. at 151-55, 162-66 (CDB), 156-61 (SSI)). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on the matter on April 14, 2022. (Tr. at 167-68 (request for hearing), 38-78 (hearing transcript).)

Counsel represented Plaintiff at the hearing. (Tr. at 42.) Plaintiff testified on his own behalf, answering both his attorney's and the ALJ's questions. (Tr. at 50-67.) Plaintiff's father, with whom Plaintiff lived, also testified. (Tr. at 68-73.) Finally, a vocational expert testified, subject to examination by both the ALJ and Plaintiff's counsel. (Tr. at 74-77.)

On June 29, 2022, the Commissioner sent Plaintiff notice of an unfavorable decision.[2] (Tr. at 13-37.) The ALJ recognized that Plaintiff suffered from the severe impairments of major depressive disorder, generalized anxiety disorder, social phobia, and personality disorder.[3] (Tr. at 20.) These impairments, according to the ALJ, resulted in

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on August 14, 2023. (Doc. 12.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited document rather than the docket page number.

[2] The ALJ recognized, and the parties do not dispute, that the analysis of whether Plaintiff is disabled for purposes of CDB and SSI is the same in all relevant respects. (Tr. at 17-19; *accord* SSR 11-2p, *available at* 2011 WL 4055665, at *2 (Sept. 12, 2011) ("When we make disability determinations or decisions for young adults, we use the same definition for disability as we do for other adults.").)

[3] The ALJ also considered other claimed impairments, including attention deficit hyperactivity disorder, but found them to be non-severe or not medically determinable based on the record. (Tr. at 20.)

Plaintiff being moderately impaired in each of the four functional limitation categories recognized by 20 C.F.R. § 416.920a: the ability to understand, remember, or apply information; the ability to interact with others; the ability to concentrate, persist, or maintain pace; and the ability to adapt and manage himself. (Tr. at 20-22.) But despite Plaintiff's impairments and limitations, the ALJ found that he did not qualify for benefits. (Tr. at 31.) First, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform work at each physical exertional classification, *see* 20 C.F.R. § 416.967, so long as the job included significant nonexertional limitations to account for Plaintiff's mental impairments. (Tr. at 23.) Those limitations included that Plaintiff

> is limited to simple and routine tasks performed in a work environment free of fast-paced production requirements (i.e. no work on an assembly line); is limited to low stress work, which is defined as involving only simple, work-related decisions and routine work place changes; is limited to occasional interaction with co-workers and supervisors; is limited to no transactional interaction with the public, i.e. sales, negotiation, customer service, or resolution disputes; the work itself should deal with things rather than people throughout a typical workday; and there should be no tandem tasks or teamwork required.

(Tr. at 23.) With these limitations, the ALJ credited the testimony of the vocational expert that there were at least three representative jobs listed in the Dictionary of Occupational Titles ("DOT") which were available in the national economy: cleaner, industrial (DOT No. 381.687-018); warehouse worker (DOT No. 922.687-058); and package sealer, machine tender (DOT No. 920.685-074). (Tr. at 30, 75.) Accordingly, the ALJ found Plaintiff not disabled for benefits purposes. (Tr. at 31.) Plaintiff appealed the ALJ's decision, but the Appeals Council denied his request for further review (Tr. at 4-9), making the ALJ's decision the final decision of the Commissioner.

Plaintiff does not challenge any of the ALJ's determinations on his physical impairments or limitations, nor does Plaintiff contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. § 416.920(a)(4)[4] for evaluating disability claims. Nonetheless, Plaintiff asserts that the decision of the ALJ must be reversed for several reasons. Although digested and reordered here, the Court understands Plaintiff to essentially be raising four issues. First, Plaintiff argues that the ALJ's opinion was internally inconsistent with respect to the facts the ALJ established regarding Plaintiff's symptoms and the ALJ's RFC. Second, Plaintiff argues that the ALJ erred in finding that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record" and, as a result, wrongfully discounted the credibility of Plaintiff's statements. Third, Plaintiff argues that the ALJ's assigned RFC wrongfully failed to include a restriction to only superficial interactions with others, which in turn caused the ALJ to ask a flawed hypothetical question at step five of the five-step analysis. Fourth, Plaintiff argues more generally that the ALJ simply misevaluated the evidence in the record when the ALJ

---

[4] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. *Id.* § 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under Appendix 1 to Subpart P of Part 404. *Id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and decide (at step four) whether the claimant can still do their past work given their limitations. *Id.* § 416.920(a)(4)(iv). Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v).

concluded that Plaintiff could sustain regular full-time employment. This Court will consider Plaintiff's arguments in that order.

## ANALYSIS

This Court reviews an ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision is infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1089 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to ascertain whether it contains sufficient evidence to support the ALJ's conclusion. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). When substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089. But if an ALJ fails to explain their evaluation of the persuasiveness of the record's prior administrative medical findings, that is a legal error subject to de novo review. *Joel M. B. v. Kijakazi*, No. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *2 (D. Minn. June 1, 2022) (citing *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)); *Michael B. v. Kijakazi*, No. 21-cv-1043 (NEB/LIB), 2022 WL 4463901, at *1 (D. Minn. Sept. 26, 2022).

## I.   CONSISTENCY OF THE ALJ'S OPINION.

Plaintiff makes two arguments regarding supposed inconsistencies in the ALJ's written decision. The first argument concerns a supposed internal inconsistency. Consulting examiner Alford Karayusuf, M.D., opined that Plaintiff could understand, retain, and follow simple instructions but would be limited to superficial, infrequent interactions with co-workers, supervisors, and the public. (Tr. 474.) The ALJ leaned heavily on the opinions of Dr. Karayusuf in concluding that Plaintiff's impairment did not meet or medically equal the severity of any of the listed impairments at step three of the five-step analysis. Yet when determining Plaintiff's RFC at step four, the ALJ did not include an express limitation to "superficial" interactions with co-workers, notwithstanding Dr. Karayusuf's opinion. Had the written opinion been internally consistent, argues Plaintiff, then the ALJ would not have credited Dr. Karayusuf's opinions so heavily at step three and then disregarded an aspect of that opinion at step four.

It is well established that adopting only part of a medical opinion is not by itself evidence of inconsistency. *Austin*, 52 F.4th at 729 ("[T]he ALJ is free to accept some, but not all of a medical opinion."). And here, the ALJ adequately explained why he did not wholly adopt Dr. Karayusuf's opinion for purposes of determining the RFC. (*See, e.g.,* Tr. at 20-27) (discussing Dr. Karayusuf's assessment, other record evidence of Plaintiff's impairments and limitations, and ultimately concluding Dr. Karayusuf's opinion was only partially persuasive).) But agreeing with Dr. Karayusuf for some purposes did not lock the ALJ into adopting wholesale Dr. Karayusuf's opinion regarding every aspect of Plaintiff's limitations.

6

CASE 0:23-cv-01403-ECT-DLM   Doc. 19   Filed 07/25/24   Page 7 of 14

Plaintiff's second argument concerns a supposed external inconsistency—that is, an instance where the ALJ's written opinion allegedly misrepresents the medical record. In determining the RFC at step four, the ALJ stated "they limited her [sic] to performance of routine repetitive work, brief and superficial contact with coworkers and the general public, and ordinary supervision found in customary work setting[s]." (Tr. 28.) Plaintiff asserts that the "they" in the above quote refers to Dr. Karayusuf and to Dr. Cynthia Crandall, Ph.D. L.P., a state agency evaluator. According to Plaintiff, the ALJ accurately summarized Dr. Crandall's opinion, but not Dr. Karayusuf's opinion, which expressed only that Plaintiff should be limited to superficial contact with any supervisor, not that Plaintiff could handle ordinary supervision or brief and superficial contact with coworkers and the general public. The ALJ therefore erred, argues Plaintiff, in saying that "they" had offered the opinions that "they" had.

Plaintiff is not correct as a factual matter. In his decision, the ALJ cites to Hearing Exhibits 4A-6A, 9A, and 12A in referencing the evaluations above. Those documents are assessments by Dr. Crandall (Tr. at 82-102) and Dr. Marci Mylan, Ph.D., L.P., another state agency evaluator (Tr. at 112-19, 122-29). It is true that each of these evaluators reviewed and considered Dr. Karayusuf's assessment of Plaintiff (*see, e.g.,* Tr. at 86, 93, 100, 116, 126), but Dr. Karayusuf was not one of the evaluators. And both Drs. Crandall and Mylan did find (as the ALJ recounted) that Plaintiff could handle ordinary supervision as well as brief and superficial interactions with coworkers and the public. (Tr. at 87, 94, 101, 117, 127.) Plaintiff's suggestion that the ALJ misconstrued Dr. Karayusuf's opinion, or that the ALJ wrongly interpreted the state agency findings, is incorrect.

7

Even if there were some minor inconsistencies on this front, though, Plaintiff's argument regarding the ALJ's misstatement of the medical record would be unavailing because it ignores the context of the ALJ's analysis:

> On this record, the Disability Determination Services psychological consultants rated the "paragraph B" criteria as: None, Moderate, Moderate, Mild. *In terms of work limitations, they limited [him] to performance of routine repetitive work, brief and superficial contact with coworkers and the general public, and ordinary supervision found in customary work setting.* The consultants have specialized and programmatic knowledge evaluating mental impairments. They however did not have the benefit of reviewing the claimant's comprehensive record available at the hearing level, including recent medication management records and the claimant's testimony. For reasons articulated above, their less than moderate limitations for understanding/remember/apply information and adapt or mange oneself is not persuasive. Similarly, their opinion as to interaction with the general public is not persuasive and not supported by the record. The undersigned has included mental limitations in the residual functional capacity commensurate with moderate "paragraph B" limitations across the board. Overall, the undersigned finds the consultants' opinions only partially persuasive in assessing the claimant's mental limitations since onset.

(Tr. at 28 (citations omitted; emphasis added).) In other words, the ALJ attempted to summarize the positions of Plaintiff's assessors, only in order to explain why those opinions did not adequately reflect the full extent of Plaintiff's mental limitations. Put simply, the ALJ found *more significant* limitations than each of Plaintiff's evaluators did. This Court will not recommend remand based on nitpicking the ALJ's summary of agency opinions that were, in any event, being rejected as insufficiently accommodating to Plaintiff.

## II. CREDIBILITY OF PLAINTIFF'S STATEMENTS.

The ALJ somewhat discounted "the Plaintiff's statements concerning the intensity, persistence, and limiting effects of" his symptoms because those statements were, in the ALJ's view, "not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. at 25.) Plaintiff argues that the ALJ failed to articulate an adequate basis for discounting the credibility of these statements and thereby committed reversable error.

The ALJ's decision was more than adequate regarding why he believed the Plaintiff overstated the extent of his limitations. Indeed, the ALJ expressly discussed the larger part of the medical record during the course of the decision denying the application for benefits and contrasted the statements in the medical record against Plaintiff's statements regarding the extent of his impairments. (Tr. at 25-27.) Given the extensive examination of the record and the fact the ALJ highlighted conflicting evidence against Plaintiff's claims, the Court finds that the ALJ properly assessed Plaintiff's credibility and provided his reasoning for it.

## III. PLAINTIFF'S RFC AND THE HYPOTHETICAL QUESTION TO THE VOCATIONAL EXPERT.

The ALJ found at step four that Plaintiff had the RFC for work at all exertional levels, but that Plaintiff had non-exertional limitations, including being limited to only occasional interactions with co-workers and supervisors. (Tr. at 27). As a part of this analysis, the ALJ utilized Dr. Karayusuf's consultative examination, (Tr. at 26-27 (citing Tr. 472-474)), as well as Dr. Crandall's and Dr. Mylan's assessments, (Tr. at 82-102; 112-119; 122-129). Dr. Karayusuf's report stated that Plaintiff should be limited to superficial

9

and infrequent interactions with coworkers, supervisors, and the public. (Tr. at 474.) The ALJ, however, did not expressly include in the RFC a limitation to only superficial interactions, which Dr. Karayusuf recommended. Plaintiff contends this is legal error, because the ALJ "implicitly credited Dr. Karayusuf, who restricted the Plaintiff to superficial" interactions, but then did not include the superficial contact limitation with coworkers and supervisors in the RFC. (Doc. 16 at 13.)

RFCs are legal determinations, not medical ones. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016) ("It is the responsibility of the ALJ, not a physician, to determine a Plaintiff's RFC."). An RFC must rely on medical evidence, but the ALJ is not required to rely on medical opinions. *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022) (stating the RFC is a medical question, which requires some medical evidence to support it, but it does not require specific medical opinion) (citing *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016)). ALJs are not required to wholly accept or reject a medical opinion when determining the RFC. *See Austin*, 52 F.4th at 729 ("[T]he ALJ is free to accept some, but not all of a medical opinion.").

There are two substantial problems with Plaintiff's argument. First, the ALJ expressly discounted this aspect of Dr. Karayusuf's opinion, noting that Plaintiff himself reported the ability to engage in more meaningful interactions with others. (Tr. at 22.) This is not a case in which the ALJ purported to rely upon the opinion of a medical source and then failed to credit the entirety of that opinion without explanation. Instead, the ALJ was clear about the extent to which he found Dr. Karayusuf's opinion persuasive and equally clear regarding those areas where he disagreed with Dr. Karayusuf's opinion.

10

Second, it is not entirely accurate to say that the RFC limited Plaintiff only to occasional interactions with others. Instead, the ALJ included a number of highly specific restrictions that, in the ALJ's view, went *beyond* Dr. Karayusuf's opinion in some respects regarding Plaintiff's ability to interact with others. (Tr. at 27.) Specifically, the ALJ found that Plaintiff would be

> limited to occasional interaction with co-workers and supervisors; is limited to no transactional interaction with the public, i.e. sales, negotiation, customer service, or resolution of disputes; the work itself should deal with things rather than people throughout a typical workday; and there should be no tandem tasks or teamwork required.

(Tr. at 23.) To be sure, the ALJ did not use the word "superficial" within this RFC finding, but he accounted for this restriction in a more granular manner. This was entirely appropriate.

That the ALJ did not err in accounting for Plaintiff's social limitations in the RFC also defeats Plaintiff's argument regarding the hypothetical question the ALJ posed to the vocational expert. The crux of Plaintiff's contention is that the hypothetical question, which was based off the RFC later assigned to Plaintiff, did not adequately capture the restrictions in Plaintiff's ability to interact with others, and therefore the ALJ erred in relying on the vocational expert's testimony that a hypothetical claimant with the restrictions stated in the hypothetical question could perform work found in significant numbers in the national economy. But the ALJ's RFC determination was supported by substantial evidence on the record as a whole. Accordingly, the hypothetical question posed to the vocational expert based off that RFC was similarly appropriate. The ALJ did not err in relying upon the

11

vocational expert's testimony in response to that question, in which the vocational expert stated that a hypothetical claimant with the RFC later assigned to Plaintiff could expect to find several jobs which, taken together, exist in significant numbers in the national economy.

### IV. ABILITY TO SUSTAIN FULL-TIME WORK.

Finally, Plaintiff argues that the ALJ erred in determining that he can sustain full-time employment in the national economy despite his impairments. Much of Plaintiff's argument consists simply of the complaint that some of the evidence in the record indicated that he would be unable to work full-time. That is correct. But substantial evidence pointed in the other direction as well, as recounted fully by the ALJ in his decision. That evidence points in both directions is reason for *affirming* the decision of the ALJ, not for reversing the decision. *See Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021).

Plaintiff makes two additional sub-arguments worth addressing, however. First, Plaintiff suggests that the ALJ was required to affirmatively find that Plaintiff could work full-time. (*See* Doc. 16 at 28-29) (citing *Bladow v. Apfel*, 205 F.3d 356, 359 (8th Cir. 2000).) *Bladow*, however, is not a helpful case for Plaintiff. In that matter, the ALJ's decision was ambiguous regarding whether the claimant could work a full eight-hour day or some amount less than that and therefore merited remand for further proceedings. *Bladow*, 205 F.3d at 359-60. Here, by contrast, the Court does not find the ALJ's decision in this case to be ambiguous in this regard.

Second, Plaintiff argues that the opinions of the reviewing state agency psychologists were based on an incomplete medical record and therefore could not properly

12

form the basis for the ALJ's conclusion that Plaintiff could work full-time.[5] The Court agrees that, had the ALJ based his conclusions entirely on the opinions of the state agency psychologists, remand would be necessary. But the ALJ did not do this—indeed, the ALJ was overwhelmingly clear that he was not doing this, as he labeled the opinions of those doctors as being only partially persuasive and did so partly because the reviewing sources did not have available to them the entirety of the relevant medical record. (Tr. at 28.) And based on the ALJ's interpretation of the record, Plaintiff's impairments were in fact more severe, resulting in additional limitations in the RFC. (Tr. at 23.) This was not error.

## RECOMMENDATION

Based on the above, as well as on the files, records, and proceedings in this case,

**IT IS RECOMMENDED THAT**:

1. The decision of the ALJ denying benefits be **AFFIRMED**.

2. Plaintiff's motion (Doc. 16) be **DENIED**.

3. Defendant's motion (Doc. 18) be **GRANTED**.

Dated: July 25, 2024            *s/Douglas L. Micko*
                                DOUGLAS L. MICKO
                                United States Magistrate Judge

---

[5] Plaintiff also states that "[t]he reviewing doctors did not address whether the Plaintiff could sustain full-time employment on a regular and consistent basis," implying that this was error. (Doc. 16 at 32.) But an opinion that a claimant is unable to work involves an issue reserved to the Commissioner and would not have been an appropriate opinion for the ALJ to credit had the opinion been offered. *See, e.g.*, *Ellis v. Barnhart*, 392 F.3d 988, 994-95 (8th Cir. 2005).

## **NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served with a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).